DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:     JESSICA FEINSTEIN
        Assistant United States Attorney
        One St. Andrew's Plaza
        New York, New York 10007
        (212) 637-1946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| -v.- | : | **VERIFIED CIVIL COMPLAINT FOR FORFEITURE** |
| ANY AND ALL FUNDS UP TO AND INCLUDING THE SUM OF $12 MILLION CONTAINED IN RATHBONES INVESTMENT MANAGEMENT PORTFOLIO 702461, CONTAINING ACCOUNTS 5870246110, 5870246120, 5870246121, AND 5870246180; and | : | 23 Civ.  5286 |
| A 7TH CENTURY BRONZE STATUE DEPICTING THE FOUR-ARMED GODDESS DURGA, | : | |
| Defendants in Rem. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff United States of America, by its attorney, Damian Williams, United States

Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon

information and belief, as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), by the United States of America seeking the forfeiture of the following money and property:

a. Any and all funds up to and including the sum of $12 million contained in Rathbones Investment Management portfolio 702461, containing accounts 55870246110, 5870246120, 5870246121, and 5870246180, held in the name of Julia E. Copleston (the "$12 Million"); and

[THIS SECTION INTENTIONALLY BLANK]

b.   A 7th century Bronze statue depicting the four-armed goddess Durga,

approximately 191 centimeters, or 6.2 feet, in height (the "Durga," and together with the $12

Million, the "Defendants *in Rem*"). A photograph of the Durga is below:



2.      This Court has original jurisdiction over this forfeiture action pursuant to

Title 28, United States Code, Sections 1345 and 1355.

3.      Venue is proper pursuant to Title 28, United States Code, Section

3

1355(b)(1)(A) and (b)(2), which provides that a forfeiture action may be brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, including when property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government.

4.     The $12 Million is currently contained in Rathbones Investment Management portfolio 702461, which includes account numbers 58702461-180, 58702461-110, 58702461-120, and 58702461-121 ("Douglas Latchford Estate Accounts"), located in the Bailiwick of Jersey.

5.     The Durga is presently located in the United Kingdom.

## The $12 Million

6.     As set forth below, there is probable cause to believe that the $12 Million is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 542 (entry of goods by means of false statements), 545 (smuggling), 1343 (wire fraud), and 2314 (transportation of stolen goods); and pursuant to Title 18, United States Code, Section 981(a)(1)(A), as property involved in or traceable to a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957 (transactional money laundering).

7.     Douglas Latchford, a/k/a "Pakpong Kriangsak," was a prominent collector and dealer in Southeast Asian art and antiquities.   Until his death in 2020, Latchford was based primarily in Thailand and the United Kingdom.

4

8.      In October 2019, a grand jury in this District returned a felony indictment charging Douglas Latchford, a/k/a "Pakpong Kriangsak," with wire fraud conspiracy and substantive wire fraud (18 U.S.C. §§ 1349, 1343), conspiracy to commit entry of goods by false statements (18 U.S.C. §§ 371, 542), conspiracy to commit smuggling (18 U.S.C. §§ 371, 545), conspiracy to commit interstate transportation of stolen property (18 U.S.C. §§ 371, 2314), and other crimes related to a multi-year scheme to sell looted Southeast Asian antiquities on the international art market, primarily by creating false provenance documents and falsifying invoices and shipping documents. *See United States v. Latchford*, 19 Cr. 748 (AT) (the "Indictment") (attached as Exhibit A hereto and incorporated herein by reference). In September 2020, the Indictment was dismissed due to the death of Latchford.

9.      As alleged in the Indictment, as part of the scheme to defraud, Latchford sold many stolen and illegally imported Southeast Asian—primarily Cambodian—antiquities to dealers and collectors located in the United States.

10.      Between 2003 and 2016, Latchford maintained bank accounts in New York, New York (the "New York Accounts") and in the United Kingdom (the "UK Accounts," together with the New York Accounts, the "Primary Latchford Accounts").

11.      Between 2005 and 2020, Latchford also maintained bank accounts at Rathbones Investment Management in the Bailiwick of Jersey (the "Jersey Accounts").

12.      Between 2003 and 2016, Latchford received more than $12 million in United States currency in the Primary Latchford Accounts as payment for the sale of stolen and smuggled Southeast Asian antiquities to buyers and dealers in the United States, for which he provided false provenance and/or made false statements on shipping records and importation

documents when those antiquities were imported into the United States. Latchford then wired those illegal proceeds to his Jersey Accounts, as described in the following examples:

      a.  In April 2006, Latchford received $11 million in the New York Accounts as payment for the sale of multiple Khmer and Southeast Asian antiquities to a private buyer in the United States.   Latchford made fraudulent misrepresentations to the buyer regarding the provenance, or ownership history, of certain of the antiquities, and also lied to United States Customs and Border Protection regarding the country of origin and value of certain of the antiquities.   In June 2006, Latchford transferred $5 million from the New York Accounts to the Jersey Accounts.

      b.  In June 2014, Latchford received approximately $1.8 million in the UK Accounts for his sale through a New York-based gallery of a 10th century Bronze Khmer statue from Cambodia.   The shipping invoice falsely stated that the statue was from Thailand, thereby enabling the statue to be imported into the United States in contravention of the embargo on Cambodian bronze antiquities described in the Indictment.   A day after receiving the $1.8 million in his UK Accounts, Latchford wired approximately $1.2 million to the Jersey Accounts.

      c.  In November 2014, Latchford received approximately $8 million in the UK Accounts as payment for the sale to an American buyer of two Khmer bronze and stone statues.   The invoice for the statues stated "N.E. Thailand," when in fact the statues were from Cambodia. In December 2014, Latchford wired $6 million to the Jersey Accounts.

      13.    As described above, between in or about 2003 and in or about 2016, Latchford made multiple transfers greater than $10,000 from the Primary Latchford Accounts to the Jersey Accounts, totaling more than $12 million.   These transfers consisted of the proceeds

of fraud, smuggling, and customs violations related to the sale of stolen Southeast Asian antiquities in the United States.   At least $12 million of the illegal proceeds in the Jersey Accounts were eventually transferred and consolidated into the Douglas Latchford Estate Accounts.

## The Durga

14.     As set forth below, there is probable cause to believe that Latchford used illegal proceeds to purchase the Durga, which was stolen from Vietnam in 2008 or 2009.

15.     In 2007, Latchford received $13.6 million in the New York Accounts as payment for the sale of multiple Khmer and Southeast Asian antiquities to a private American buyer in the United States. Latchford made fraudulent misrepresentations to the buyer regarding the provenance, or ownership history, of certain of the antiquities, and also lied to United States Customs and Border Protection regarding the country of origin and value of certain of the antiquities.   Latchford retained approximately $10 million from the $13.6 million in a savings account that was part of the New York Accounts, and slowly drew down the balance with withdrawals and purchases.

16.     In November 2008, Latchford contacted a bank representative who helped him with both his New York Accounts and UK Accounts ("Representative-1").   Latchford told Representative-1 that he would be traveling in Vietnam, that he was making a purchase, and that he would likely need to "draw down" $1 million. Shortly thereafter, Latchford provided instructions to wire $1.5 million to a particular individual ("Person-1") with a personal bank account in Singapore.   The email address for Person-1 included a Vietnamese email domain associated with Ho Chi Minh City, Vietnam.

17.     On November 18, 2008, Latchford called his relationship manager for the Jersey Accounts ("Manager-1") and told him that Latchford needed to raise approximately $2.3 million for a piece of art, which would consist of $1 million cash, and $1.3 million from the Jersey Accounts.   Latchford said he would call from Vietnam to confirm whether Manager-1 should sell bonds held in the Jersey Accounts to fund the purchase.   On or about November 21, 2008, Latchford again called Manager-1. During the call, Latchford said he was going to Vietnam to see the work of art, that he already had $1.5 million to pay for the deposit, and he would need a further $500,000 from the Jersey Accounts.

18.     On January 21, 2009, Latchford emailed an art dealer in New York (the "Dealer") a photograph of the Durga lying on its back, covered in what appears to be dirt and minerals indicative of recent excavaction, which is attached as Exhibit B to this Complaint. Latchford titled the email "Durga," and wrote, "CONFIDENTIAL FOR YOUR EYES ONLY – NOT TO BE SHOWN TO ANYBODY."   He further wrote, "Have now got a photo," and indicated in substance and in part that he and a scholar he worked with believed the piece was "late 7th C."   On January 22, 2009, Latchford emailed the Dealer a close-up photograph of the mineral-encrusted belt buckle on the Durga. Latchford also attached a photograph of what appears to be the ruins of a temple, noting that it showed "an [a]riel [sic] view of My Son, showing the site." My Son is a United Nations Educational, Scientific, and Cultural Organization ("UNESCO") World Heritage Site located in Vietnam featuring ruined temples from the ancient Champa Kingdom.

19.     Between November 2008 and March 2009, around the time that Latchford emailed the Dealer about the Durga, Latchford sent multiple wires totaling $840,000 from the

8

New York Accounts to Person-1, including one wire for $750,000. Based on the timing, size of the payments, and Vietnamese email address for Person-1, Latchford sent these wires as payments for the Durga.    Nearly half of the $750,000 wire sent to Person-1 is traceable to the illegal proceeds described in paragraph 15, above.

20.    Representatives of the United States Attorney's Office of the Southern District of New York and the Department of Homeland Security - Homeland Security Investigations interviewed an art restorer who worked frequently for Latchford (the "Restorer"). The Restorer recognized photographs of the Durga as an artwork that the Restorer remembered restoring for Latchford in approximately the mid-2000s.    At the time that the Restorer worked on the Durga, the Restorer understood the Durga was recently found because the bronze was corroded and covered with iron deposits.    The Restorer further understood that the Durga was from Vietnam.    The Restorer recalled that after Restorer finished working on the Durga, the Durga was placed for a time in Latchford's apartment in London.

21.    Photographs of the Durga in one of Latchford's residences, adjorned with gold jewelry, are attached hereto as Exhibit C.

22.    Latchford published images of the Durga in a 2011 book about Khmer bronzes authored by Latchford and a scholar with whom Latchford frequently worked.    The book states that the Durga is "previously unpublished," meaning that it likely was newly discovered, and is "[o]ne of the earliest known Southeast Asian bronze images cast by [the] lost wax [casting technique] with an iron armature supporting the core."

23.    In 2010 and 2011, Latchford attempted to sell the Durga to an American collector in the United States (the "Collector").    Latchford sent multiple emails to the Collector

9

with photographs of the Durga, advertising the piece as "the finest Asia bronze sculpture that exists," and telling the Collector that "it is probably the portrait of a Cham Pre Angkorian Queen, wife of Prince Prakashadharama . . .   from Sakmbor Prei Kuk in N E Cambodia . . . who became Queen of Champa."   Latchford further wrote that "It has taken over 1 and 1/2 years to clean it from what it looked like."   In a 2011 email to the Collector, Latchford falsely stated that the Durga "has a provenance going back to mid 1960's." The Collector declined to purchase the Durga.

## CLAIMS FOR FORFEITURE

### Forfeiture Under 18 U.S.C. § 981(a)(1)(C)
### (Property Constituting or Derived From Proceeds of Violations of Specified Unlawful Activity)

24.     Paragraphs 1 through 23 of this Complaint are repeated and re-alleged as if fully set forth herein.

25.     Title 18, United States Code, Section 981(a)(1)(C) subjects to civil forfeiture, "any property, real or personal, which constitutes or is derived from proceeds traceable" to a violation of Title 18, United States Code, Sections 542, 545, or "any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense."

26.     Under Title 18, United States Code, Section 1956(c)(7), "specified unlawful activity" is defined to include, *inter alia*, "any act or activity constituting an offense listed in" Title 18, United States Code, Section 1961(1); and Title 18, United States Code, Sections 542 (entry of goods by false statements) and 545 (smuggling). Section 1961(1), in turn,

10

defines "racketeering activity" to include offenses of Title 18, United States Code, Section 1343 (wire fraud), and 2314 (interstate transporation of stolen property).

27.     Title 18, United States Code, Section 542, provides in pertinent part that "whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement" shall be subject to criminal penalties.

28.     Title 18, United States Code, Section 545, provides in pertinent part that "[w]hoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law," shall be subject to criminal penalties.

29.     Title 18, United States Code, Section 1343, provides in pertinent part, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" shall be subject to criminal penalties.

30.     Title 18, United States Code, Section 2314, provides in pertinent part that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares,

merchandise, securities or money, the value of $5,000 of more, knowing the same to have been

stolen, converted or taken by fraud," shall be subject to criminal penalties.

31.     By reason of the foregoing, the Defendants *in Rem* are subject to forfeiture

to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as property

constituting or derived from proceeds traceable to violations of Title 18, United States Code,

Sections 542, 545, 1343, and 2314.

**Forfeiture Under 18 U.S.C. § 981(a)(1)(A)**
**(Property Involved in or Traceable to Proceeds of a Violation of Title 18, United States Code, Section 1957)**

32.     Paragraphs 1 through 23 of this Complaint are repeated and re-alleged as

if fully set forth herein.

33.     Title 18, United States Code, Section 981(a)(1)(A) subjects to civil

forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in

violation of section . . . 1957 . . . of this title, or property traceable to such property."

34.     Title 18, United States Code, Section 1957 provides, in relevant part,

"Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally

derived property of a value greater than $10,000 and is derived from specified unlawful activity

[as defined in 18 U.S.C. § 1956(c)(7)]" shall be subject to criminal penalties.

35.     Under Title 18, United States Code, Section 1956(c)(7), "specified

unlawful activity" is defined to include, *inter alia*, "any act or activity constituting an offense

listed in" Title 18, United States Code, Section 1961(1); and Title 18, United States Code,

Sections 542 and 545. Section 1961(1), in turn, defines "racketeering activity" to include

offenses of Title 18, United States Code, Section 1343 (wire fraud), and 2314 (interstate

12

transporation of stolen property).

        36.    By reason of the foregoing the Defendants *in Rem* are subject to forfeiture

to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property

involved in a money laundering transaction or an attempted money laundering transaction, in

violation of Title 18, United States Code, Section 1957, or as property traceable to such property.

Dated: New York, New York
       June 22, 2023

                                DAMIAN WILLIAMS
                                United States Attorney for the
                                Southern District of New York
                                Attorney for the Plaintiff
                                United States of America

By:     _____
                                JESSICA FEINSTEIN
                                Assistant United States Attorney
                                One St. Andrew's Plaza
                                New York, New York 10007
                                Telephone: (212) 637-1946

## <u>VERIFICATION</u>

| | |
|---|---|
| STATE OF NEW YORK | ) |
| COUNTY OF NEW YORK | : |
| SOUTHERN DISTRICT OF NEW YORK | ) |

JOHN PAUL LABBAT, pursuant to Title 28, United States Code, Section 1746,

hereby declares under penalty of perjury that he is a Special Agent with the Department of

Homeland Security, Homeland Security Investigations; that he has read the foregoing Verified

Complaint and knows the contents thereof; that the same is true to the best of his knowledge,

information and belief; and that the sources of his information and the grounds of his belief are

his personal involvement in the investigation, and conversations with and documents prepared by

law enforcement officers and others.

_____
JOHN PAUL LABBAT
Special Agent
Homeland Security Investigations

Executed on this
20 day of June 2023

14